# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

In re:

**MICHAEL B. & DANA NICOLE PERRY,**                    **Case No. 04-50808-A**

       **Debtors.**                                      **Chapter 13**

---

In re:

**EBRIMA SECKA,**                                      **Case No. 04-52107-A**

       **Debtor.**                                       **Chapter 13**

---

In re:

**JEFF J. & DIANE S. WRIGHT,**                         **Case No. 04-52114-A**

       **Debtors.**                                      **Chapter 13**

---

## AMENDED MEMORANDUM OPINION AND ORDER

---

This matter came before the Court on the former Chapter 7 trustee's Motions for

Allowance and Payment of Administrative Priority Expense Claim in each of the above-

referenced cases. In all three cases the debtors filed for relief under Chapter 7 of the Bankruptcy

Code and David R. Ruby ("Ruby") was appointed as the trustee; however, the debtors converted

their cases to ones under Chapter 13 of the Code prior to Ruby making any distributions. All of

the cases involve a dispute between the debtors and the trustee as to the values of the debtors' real property.[1] This Court must determine whether the former Chapter 7 trustee is entitled to any compensation for services he provided prior to the conversion of the cases.

This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. After taking the matter under advisement, we make the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

The facts regarding the main issue in all three cases are identical with the exception of the dates and figures.[2]

On March 17, 2004, the Perrys filed their bankruptcy petition and listed the value of their home, located at 839 Garrow Road, Newport News, Virginia, as $116,700.00, using the city assessment as their valuation source. On July 30, 2004, Secka filed his petition and listed the value of his home, located at 13 Matthews Road, Newport News, Virginia, as $82,000.00.[3] On July 31, 2004, the Wrights filed their petition and, using the city assessment, listed the value of their home, located at 209 Albany Drive, Hampton, Virginia (all three properties are collectively referred to as "the Properties"), as $124,000.00. These values rendered these cases "no-asset" cases and left the unsecured creditors with no distribution.[4] However, Ruby believed the

---

[1] The Secka matter also involved the transfer of the debtor's interest in real estate from himself to himself and his wife four days before the he filed bankruptcy. While this fact is not present in the other cases, it does not change the findings of this Court and will be addressed in Section II. B.

[2] See n.1.

[3] Secka's schedules do not state where he obtained that value. Secka only owns a 50% interest in the real property.

[4] The Perrys: $116,000 - $11,600 (costs of sale) - $9,050 (trustee's commission) - $96,145 (mortgage) = - $795.00. The Wrights: $124,000 - $91,624 (mortgage) - $12,400 (costs of sale) - $5,987 (trustee's commission) - $10,000 (allowed exemption) = $3,989 (exposed equity). . These numbers are taken from the debtors' Schedule A's with

Properties to be worth much more and, thus, had a Court-approved real estate agent complete a comparative market analysis ("CMA") on all of them. Through the CMA the agent determined the Perrys' property to be worth $149,000.00, a value that was confirmed by an order entered December 16, 2004. This higher value of the property converted this case to an "asset" case that would have paid the unsecured creditors over fifty percent (50%) of the amounts they were owed. Similarly, the agent determined the Wrights' property to be worth $169,000.00 and Secka's property to be worth $137,900.00, values that would have resulted in a 100% distribution to unsecured creditors. In order to capitalize on the potential equity in the Properties, Ruby filed motions to employ a real estate agent to market and sell them. In response to these motions the debtors converted their cases to ones under Chapter 13. Ruby subsequently filed the instant applications for compensation.

Additionally, on July 24, 2004, Secka, by Deed of Gift, transferred his interest in the real property from himself, solely, to himself and his spouse as tenants by the entireties.

## II. CONCLUSIONS OF LAW

Many theories have been posited to support the compensation of a former Chapter 7 trustee after a conversion to Chapter 13. *See In re Silvus*, No. 04-51612, slip op. at 41 (Bankr. E.D. Va. August 26, 2005) (thoroughly discussing the "Multiple" or "Composite" Trustee Theory, the Strict Interpretation of Section 326 Theory, the Separate and Distinct Cases Theory,

---

the exception of both results, which were incorrect on the schedules. Secka: While exact costs for this case are not included in the schedules, the trustee stated it was a no asset case.

the Constructive Disbursement Theory, the Section 105 Theory, and the *Quantum Merit*

Theory).[5]

### A. Plain Language

Trustee compensation is governed by § 330(a) of the code, and allowed as an

administrative expense of the bankruptcy estate pursuant to § 503. 11 U.S.C. §§ 330(a), 03(b)(2)

(2004). However, Congress did place limits on the amount of compensation a trustee may

receive in a case. 11 U.S.C. § 326. Section 326 states a Chapter 7 trustee's compensation may

not:

> exceed 25 percent on the first $5,000 or less, 10 percent on any amount in
> excess of $5,000 but not in excess of $50,000, 5 percent on any amount in
> excess of $50,000 but not in excess of $1,000,000, and reasonable
> compensation not to exceed 3 percent of such moneys in excess of
> $1,000,000, upon all moneys disbursed or turned over in the case by the
> trustee to parties in interest, excluding the debtor, but including holders of
> secured claims.

*Id.* § 326(a). When the statute is clear and unambiguous the plain language of the statute must be

followed. *Silvus*, slip op. at 41. According to the plain language of the above-referenced

statute, a Chapter 7 trustee is entitled to receive compensation *only after he has made a*

*disbursement of funds. Id.* at 41.

Two exceptions exist to the plain language rule. First, can it be demonstrated that the

result of applying the plain language is contrary to the intent of Congress in drafting the statute,

and secondly, is the outcome so absurd that it shocks the conscience. *Id.* at 41-42. Finding

either exception, however, is very rare. *Id.* at 42.

---

[5] The
*Silvus* case actually involved four cases, *In re Silvus*, Case No. 04-51612; *In re Jurgensen*, Case No 04-51841; *In re Sanders*, Case No. 04-51549; and *In re Lee*, Case No. 04-52108.

The facts in the three cases in this opinion are identical to those in the cases resolved by the *Silvus* court. In fact, the cases in *Silvus* and those in this opinion all involve the same Chapter 7 trustee, Ruby. In all the cases Ruby disputed the values of the debtors' homes as listed in the bankruptcy schedules and in each case employed a court-approved real estate agent to prove the properties had a higher value. However, in each case the debtors converted to Chapter 13 before Ruby was able to make any distributions as the Chapter 7 trustee.

This Court follows the reasoning in *Silvus*, finding that the language of § 326 is clear and unambiguous and, therefore, a plain language reading must be applied. Such a reading does not allow a Chapter 7 trustee to be compensated if he has not many any distributions. The instant cases converted prior to Ruby making any distribution. Accordingly, he is not entitled to any compensation for his services.

 Additionally, given that the facts of the instant cases are identical to those of the cases in *Silvus*, this Court must find that neither exception to the plain language reading is invoked; the reading does not conflict with any other part of the Bankruptcy Code, nor does it produce an absurd result.[6]

### B. Quantum Meruit

Ruby bases his argument for compensation in all three cases on the theory of *quantum meruit*. The *Silvus* court addressed that theory, but did not adopt it given the facts of the cases. Again, noting that the facts of the three cases involved herein are identical to those in *Silvus*, this Court must necessarily adopt the rationale and findings of the *Silvus* court in denying compensation based on this theory.

In *Silvus*, Judge St. John clearly explained the traditional framework for *quantum meruit* being based upon implied contract and a reasonable expectation of payment. *Id.* at 46. He correctly found that there was no implied contract regarding the trustee's performance of his duties as they are statutorily prescribed, and that the trustee could not reasonably expect payment if he did not make any disbursements given the plain language of § 326. *Id.* at 47. Judge St. John did note that *quantum meruit* might be a viable theory on which to base compensation for a former Chapter 7 trustee, but only when "the trustee has uncovered undisclosed assets," which he found that Ruby had not done. *Id.* at 47-48. In *Silvus*, Ruby merely argued over the values of properties already disclosed by the debtors. *Id.* Likewise, in the instant cases, Ruby did not discover or uncover assets; he again simply disagreed with their listed values. Therefore, Ruby cannot prevail on the *quantum meruit* theory for disputing the values of the debtors' properties, even if he was correct.

In *Secka*, there is the additional issue of the transfer of property from the debtor to the debtor and his spouse four days prior to Secka filing for bankruptcy. Ruby's actions to avoid what he termed a fraudulent transfer, likewise, do not qualify for compensation under the *quantum meruit* theory. Any avoidance action taken by Ruby would have been required as a duty of the trustee and not because of an implied contract or reasonable expectation of compensation; and again, Ruby did not discover the asset; it was disclosed on Secka's petition.

At the time the Application for Compensation was filed in the Secka case, the funds, in the amount of $778.54, had already been distributed to Ruby; therefore, Ruby must disgorge those funds to the Chapter 13 trustee.

---

[6] See *Silvus* for a full analysis of both exceptions. This Court feels it is judicially inefficient to re-analyze the

This Court agrees with Judge St. John that this result is unfair and unpopular, but that it is within Congress' legislative authority alone to change.

## CONCLUSION

Based on the foregoing facts and legal conclusions:

1. Ruby is not entitled to receive any compensation for his services as the Chapter 7 trustee under a plain language reading of § 326.

2. Ruby is not entitled to receive any compensation for his services as the Chapter 7 trustee under a theory of *quantum meruit.*

3. Ruby is ordered to disgorge to the Chapter 13 trustee funds in the amount of $778.54 as compensation paid to Ruby as the former Chapter 7 trustee in the *Secka* case.

**IT IS SO ORDERED.**

Norfolk, Virginia
September 8, 2005

DAVID H. ADAMS
United States Bankruptcy Judge

Copies to:
    David Ruby, Former Chapter 7 Trustee
    George Neal, Chapter 13 Trustee
    Olaf Gebhart, Jr., Esq.
    Michel Bruno, Esq.
    Lorin Hay, Esq.

NOTICE OF JUDGEMENT OR ORDER
Entered on Docket
**SEP - 8 2005**

---

reasoning, when it has been done so well by Judge St. John.